IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

EASTERN DISTRICT—PHILADELPHIA, 1885.

## Cummisky *versus* Cummisky.

In an action of ejectment by A. against Mrs. C. & C., in which A. claimed title through B., who purchased the property at a sheriff's sale under proceedings in partition, A. asked the court to charge that in pursuance of said partition B. derived a valid title, and that the validity of the same could not be impeached in this collateral action, except for fraud. Both of these points the court refused. The proceedings in partition, which were in Common Pleas, by A. against Mrs. C., his co-tenant, were as follows: The writ was served on Mrs. C. & C., a *narr.* filed, an appearance entered, and a plea of *non tenent insimul* put in. This plea was afterwards withdrawn, and the court entered a judgment *quod partitio fiat* (without, as alleged by the defendants in ejectment, examining the title). On the same day, on motion of A.'s attorney, a writ *de partitione facienda* was awarded and issued returnable to the following September Term, but by mistake the prothonotary made it returnable to the then present May Term, which left too short a time for the requisite notices. Thereupon a return of this writ was directed, and a new writ issued, without a special order of the court. Under this writ an inquisition in due form was had and returned, and in this inquisition it was set forth that the parties in the said writ named had been severally warned, and that as many as chose were present. The inquisition further set forth that the property could not be divided without prejudice to the whole, and stated the sum of the appraisement; all of which was approved by the court. A rule was then granted on all persons interested to come into court on a day fixed, and accept or refuse the premises at the appraisement, and of this rule C. and wife had notice. On the day specified no one appeared and an order was made for the sale of the property by the sheriff. In pursuance of this order, after legal notice, the property was put up and sold by the sheriff to B. The purchase money was brought into court, and a deed executed to B., which was acknowledged in open court and duly delivered. The proceedings were not copied in the partition docket. *Held,*

(1) That the statute in regard to the duty of the court to examine the title before entering the judgment *quod partitio fiat*, being merely directory, it would be presumed that the court had done its duty.

(2) That while the issuing of the alias writ *de partitione facienda*

13 OUTERBRIDGE—1

may have been irregular, yet the irregularity was not material, and could not be taken advantage of in the subsequent collateral action of ejectment.

(3) That the recital in the inquisition, that the parties in the writ named had been severally warned, was a sufficient return of the service of the notices.

(4) That the whole of the record subsequent to the judgment *quod partitio* constituted a decree of confirmation of the sale, which, though informal, was final and sufficient.

(5) That it was not B.'s duty to see that the proceedings were copied in the partition docket, and the fact that this had not been done did not affect his title.

(6) That the court therefore erred in refusing A.'s points.

February 5th, 1885.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT and CLARK, JJ.   GREEN, J., absent.

ERROR to the Court of Common Pleas, of *Crawford county :* Of January Term, 1885, No. 153.

Ejectment, by Patrick Cummisky against Nora and Bernard Cummisky for a certain lot of ground in Titusville.

On the trial, before CHURCH, P. J., the following facts appeared : On July 12th, 1881, Patrick Cummisky and Nora, the wife of Bernard Cummisky, were tenants in common of the land in dispute, each owning an undivided one half part thereof.   On December 19th, 1881, Patrick brought an action of partition, at law, against Nora, in which Bernard was joined.   In pursuance of this action the land described in the writ was sold by the sheriff, December 2d, 1882, to Ira S. Jones, to whom a deed was made, and duly acknowledged in open court.   Jones and wife, on December 18th, 1882, conveyed the land to Patrick Cummisky, who then brought this action of ejectment against Nora and Bernard Cummisky.   Upon the trial the plaintiff submitted the following points :

" 1. That the judgment rendered in the action of partition is conclusive upon Nora Cummisky, and the subsequent proceedings by which the land was sold and purchased by I. S. Jones, vested a good title in him and his vendee, Patrick Cummisky, as against Nora Cummisky and her husband."

" 2. That the defendant in this case cannot, in this action of ejectment, impeach the validity of the proceedings in partition, the court having jurisdiction, and the parties having notice, including both Nora Cummisky and her husband, except by proof of fraud."

It appeared from the records that the proceedings under the action of partition were as follows :

The writ was served on Nora Cummisky and her husband Bernard.   There was a *narr.* filed, an appearance entered, and a plea of *non insimul tenent* put in.   This plea was afterwards withdrawn, and the court entered judgment *quod partitio fiat.*

(It was alleged that this was done without any examination of the title.) On the same day, on motion of plaintiff's attorney, a writ *de partitione facienda* was awarded. The attorney, by his præcipe, ordered the writ returnable, as was proper, to the September term following; but the prothonotary, by mistake, made it returnable to the then present May term, which did not give the necessary time for all requisite notices; thereupon a return of the writ was directed and a new writ issued, no objection being made at the time. Under this new writ an inquisition was in due form had and returned, and in the inquisition it was set out that the parties in the said writ named had been severally warned, and that as many as chose were present. The inquisition further set forth that the property could not be divided without prejudice to the whole, and it was appraised at the sum of $3,083.33, all of which was approved by the court. A rule was then granted on all persons interested to come into court, on a day fixed, and accept or refuse the premises at the appraisement, and of this rule the defendants had notice. On October 3d, 1882, the day thus fixed, no one appeared to accept, and an order was made for the sale of the property by the sheriff. In pursuance of this order, and upon legal notice, the property was put up by the sheriff and sold to Ira S. Jones. The money arising from the sale was brought into court, a deed executed to Jones, and that deed, after being acknowledged in open court, was delivered to the purchaser.

The proceedings were not found copied into the partition docket.

Under this state of facts the court refused the plaintiff's points (in this action of ejectment), and charged the jury, *inter alia*, as follows:—

"In conclusion, we say to you the proceedings in this partition have not been carried on legally against this feme covert. There has been no sufficient judgment *quod partitio fiat;* no examination of title; no valid inquisition, or alias inquisition; no final judgment; no confirmation, and that includes no valid sale having been made. For all those reasons we say, defendants' title, as a co-parcener, has not been divested. Therefore, under all the evidence in this case the plaintiff is not entitled to recover, and your verdict will be for the defendants."

Verdict for defendants and judgment thereon; whereupon the plaintiff took this writ, assigning for error the refusal of his points, and the part of the general charge cited.

*Roger Sherman*, for plaintiff in error.—In Vensel's Appeal, 77 Pa. St. Rep., 71–76, Chief Justice Agnew, delivering the

opinion of the court, says: "In the sheriff's return of the inquisition, he recites that the parties in the writ were served and warned to appear. This inquisition setting forth that the premises could not be divided, and returning a valuation thereof, was approved by the court. The confirmation, after partition or sale, has all the effect of a final decree, and is conclusive of the facts set forth in the proceedings that led to the decree."

As to the regularity of the proceedings and sufficiency of the returns of the sheriff, see Dewar *v.* Spence, 2 Wharton, 211, 220, 221; Baird *v.* Corwin, 5 Harris, 462, 464, 466. As to the examination of title, see Biddle *v.* Starr, 9 Barr, 461.

In this collateral proceeding the defendants had no right to try the partition over again, or impeach the validity thereof except for fraud: Catlin *v.* Robinson, 2 W., 379; Lowber et al.'s Appeal, 8 W. & S., 387; Wilkinson's Appeal, 15 P. F. S., 189; Yaple *v.* Titus, 5 Wr., 195. The proceedings which followed the writ *quod partitio fiat*, constituted a final judgment: Frohock *v.* Gustine, 8 Watts, 121; Hawk *v.* Jones, 12 Harris, 127.

*W. R. Bole* (with whom was *J. W. Smith*), for defendants in error.—The judgment of *quod partitio fiat* was not properly entered. The Act of 1807, under which proceedings were had, provides that "the court shall proceed to examine the plaintiff's title and quantity of his part or purpart, and accordingly as they shall find his right or purpart to be, they shall give judgment and award a writ to make partition whereby such proportion or purpart shall be set out in severalty."

It nowhere appears that this Act was complied with. The original writ *de partitione facienda* was issued April 26th, 1882, returnable to the next term of court, and the next term began May 8th, 1882. No return day for this writ was fixed by the court in awarding it. It having been issued and returned unexecuted by order of the plaintiff's attorney, no alias writ could issue without an order of court awarding the writ and fixing the return day thereof: Act of March 29th, 1824, § 2. The judgment *quod partitio fiat* is merely interlocutory. The second judgment which is *stabilis in perpetuam teneatur*, that the partition be and remain firm and stable forever, must first be entered before an order of sale can be made. The suggestion that the order of sale is in effect a confirmation of the inquest of partition sanctions a very loose practice, one fraught with great danger and in violation of universal practice, and, we think, the plain provisions of the law: Mitchell *v.* Harris, 2 Clark, 230: Robinson *v.* Glancy, 19 P. F. S., 89.

[Cummisky *v.* Cummisky.]

Mr. Justice GORDON delivered the opinion of the court, March 23d, 1885.

The counsel for the plaintiff below requested the court to charge the jury " that the judgment rendered in the action of partition is conclusive upon Nora Cummisky, and the subsequent proceedings by which the land was sold and purchased by I. S. Jones vested a good title in him' and his vendee, Patrick Cummisky, as against Nora Cummisky and her husband." This was refused as was a second point, requiring the direction that the proceedings in the partition could not be impeached in the action of ejectment then trying. We think the refusal to answer as requested in both these points was error. The court held that the proceedings in partition were not conducted in a legal manner, and that Nora Cummisky was not bound thereby. The learned judge thus proceeds to enumerate the points wherein he thought the record was deficient : " There has been no sufficient judgment *quod partitio fiat ;* no examination of the title ; no valid inquisition or alias inquisition ; no final judgment ; no confirmation, and that includes no valid sale, having been made." If, indeed, these charges against the record are correct, there was certainly no title passed by the sheriff's sale and deed to Jones, and, of course, the plaintiff's title fails. There cannot be such a thing as an adversary partition without a judgment or decree that partition shall be made, neither can a sale of the property be ordered without an inquisition, and the subsequent proceedings leading to such sale. But in all this the court was mistaken ; the proceedings were irregular in no material particular. The writ was served on Nora Cummisky and her husband, Bernard ; there was a *narr.* filed, an appearance entered, and a plea put in by which the defendants denied that they held the premises together and undivided with the plaintiff. That plea was afterwards withdrawn, and thereupon the court entered judgment *quod partitio fiat.* It is said, however, that the court, before entering that judgment, made no examination of the title as required by the Act of Assembly. But as the Act, in this particular, is but directory, we will presume that the court did its duty. On the same day upon which judgment was entered, on motion of plaintiff's attorney, a writ *de partitione facienda* was awarded, and was issued returnable to the following September term. Here again the record is impeached in that an alias writ issued without the order of the court. This defect, if defect it is, is explained as follows : the attorney, by his præcipe, ordered the writ returnable, as was proper, to the September term, and the prothonotary, by mistake, made it returnable to the then present May term, which did not give time necessary for the

requisite notices, thereupon a return of it was directed and a new writ issued. This may have been irregular, but nothing more. It, in fact, carried out the order of the court, and as no objection was made to this irregularity at the time, it cannot now be taken advantage of. Under this writ an inquisition was, in due form, had and returned, and in this inquisition it is found set forth that the parties in the said writ named had been severally warned, and that as many as chose were present. It is urged that this was not a sufficient return of the service of the notices. We think it was, and in this we are sustained by the cases of Richards *v.* Rote, 18 P. F. S., 248; Horam's Appeal, 9 Id., 152; and Vensel's Appeal, 27 Id., 71. In the case first named, which was in the Orphans' Court, it was held that when the names of the parties appear in the petition and other proceedings, it will be presumed that due and regular notice was given even when it does not affirmatively so appear on the record. In other words, there is in such case a conclusive presumption in favor of the regularity of the proceedings. These authorities certainly dispose of the objection to the record now before us, for not only does it appear by the inquisition that the defendants were warned, but their names appear everywhere in the said record. As we have said, the inquisition was duly returned, and it was therein set forth that the property could not be divided without prejudice to or spoiling the whole, with an appraisement in the sum of $3,083.33, all of which was approved by the court. Thereupon a rule was granted on all persons interested to come into court on a day fixed, and accept or refuse the premises at the appraisement, and of this rule the defendants had notice. On the day thus fixed, October 3d, 1882, no one appearing to accept, an order was made for the sale of the property by the sheriff of Crawford county. In obedience to this order, as appears by the sheriff's return, on due and legal notice the property was put up for sale, and sold to I. S. Jones, the vendor of the plaintiff. The money arising from this sale was brought into court, a deed executed by him to his vendee, as prescribed by the Act of Assembly, and that deed, after acknowledgment in open court, was duly delivered. In all this there was a strict compliance with the statute, and if there is not in these proceedings a formal judgment or decree it is because the Act of Assembly does not require it. Nevertheless the whole of the record, subsequent to the judgment *quod partitio*, does constitute a decree which, though informal, is final and conclusive on all the parties. Finally, as to the objection that the proceedings are not found copied into the partition docket, we have but to say, in the language of the case of the Girard Life Insurance Company

[Michaelis v. Brawley.]

*v.* The Farmers' and Mechanics' National Bank, 7 P. F. S., 388, that this fact does in no manner affect the purchaser, since it was not his business to see to the proper keeping of the dockets.

> The judgment is reversed and a new venire ordered.